JOHN D. EMACK *v.* WILLIAM H. HUGHES.

May Term, 1902.

Present: ROWELL, C. J., TYLER, START, WATSON, STAFFORD and HASELTON, JJ.

Opinion filed August 21, 1902.

*Contract of sale—Failure to deliver—Excuse—Request to charge—Evidence—Rule of damages.*

A request to charge is sufficiently complied with if the charge as given recognizes the principle contended for, in such a way as to make it clear to the jury.

An excessive demand by one party to a contract will not excuse a proper performance by the other party.

One under contract to deliver a certain quantity of goods each month in not excused therefrom by inability to produce them fast enough to supply his customers generally.

A notice that a contract is at an end constitutes a breach of the contract by the party giving it, unless the other party is already in default.

It will not be assumed that the jury misconstrued a letter received in

evidence, in the absence of any evidence warranting such erroneous construction.

In an action by the buyer for failure to deliver goods according to the contract of sale, a request to charge that if the delay was due, in whole or in part, to the scarcity of cars, the defendant was not responsible for it, is properly refused.

The rule as to the measure of damages adopted at the suggestion of the plaintiff in the admission of his testimony, and relied upon by the defendant, should be adhered to to the end of the trial.

Upon the breach of a contract, a cause of action arises which cannot be defeated or affected by a subsequent offer to perform.

In an action for damages for the non-delivery of goods according to contract, in which the plaintiff claims that after the contract was made the price of the goods advanced, and the defendant failed to make delivery to him that he might ship his goods to others at the advanced price, evidence of the market price of the goods during the whole period of the contract, is admissible.

SPECIAL ASSUMPSIT. Plea, the general issue. Trial by jury at the March Term, 1901, Rutland County, *Munson,* J., presiding. Verdict and judgment thereon for the plaintiff. The defendant excepted.

*Butler & Moloney* for the defendant.

The defendant claimed that the non-delivery of the slate, was due to the plaintiff's failure to furnish orders therefor. This feature of the case was entirely excluded from the consideration of the jury by the charge. A party is entitled to a charge which submits a correct explanation of the law upon every feature of the case that he makes. *Vaughn* v. *Porter,* 16 Vt. 266; *Hazard* v. *Smith,* 21 Vt. 123.

The defendant requested the court to charge that the letter of August 7th contained a demand which he had no right to make under the contract. The court declined to comply with this request, and withheld the subject matter of it from the jury. Even though the entire request, as it stood, might not be sound, yet the court was bound to correctly instruct the jury on the subject thus brought to its attention. The court

instructed the jury that this letter did not constitute a breach of the contract. In determining the effect of a statement in a letter, the question is not what the writer meant, but rather what the other party had a right to understand by it. In this instance, the defendant had a right to understand by this letter that the plaintiff was insisting upon a contract co-extensive with his demands, and would receive and abide by no other. If this was so, and yet the contract was, in fact, as defendant's evidence tended to show it, was not that claim a breach of such contract, and would it not excuse performance of such contract by the defendant?

The jury ought to have been instructed that if the scarcity of cars materially affected the deliveries under the previous contracts, the defendant was not to blame for such scarcity, and therefore not in fault on July 1st; and if such scarcity or lack of cars affected the July deliveries, it excused the failure to deliver, at least *pro tanto,* in July. The meager allusion to the subject is not such an explanation and submission of the matter as the defendant was fairly entitled to. *Buck* v. *Squires,* 23 Vt. 498; *Clark* v. *Tabor,* 28 Vt. 222; *Dodge* v. *Stacey,* 39 Vt. 565; *Morse* v. *Huntington,* 40 Vt. 495.

The rule of damages adopted during the taking of the evidence should have been adhered to in submitting the case to the jury. A party cannot be allowed to try his case upon one theory on which the other party relies, and then submit to the jury an entirely different case and a different theory, and one detrimental to the adverse party.

The plaintiff's notes covered more than the actual deliveries of slate up to August 20. The defendant offered more slate and the plaintiff refused to receive it. The plaintiff having paid in advance for so much slate, he could not unreasonably refuse to receive it and at the same time recover damages for its non-delivery. It was error to withdraw this sub-

ject matter from the consideration of the jury, as was done by the charge. *Cobb* v. *Hall,* 29 Vt. 510; *Jones* v. *Marsh,* 22 Vt. 149; Addison on Contracts, s. 326.

*Joel C. Baker* for the plaintiff.

The rule of damages, if the goods had not been paid for in advance and the goods could be purchased in the market, would be the difference between the contract price and the market price at the time and place of delivery. 21 Ency. of Law 612; 2 Benj. on Sales, 1120; 2 Mechem on Sales, s. 1736; 1 Sedg. on Dam. 550; *Worthen* v. *Wilmot,* 30 Vt. 555; *Forsyth* v. *Mann,* 68 Vt. 116.

The rule of damages is the same although the purchaser has not gone into market and bought the goods. 2 Mechem on Sales, s. 1738. Where the purchaser has paid the price, or a part of it, in advance, he is entitled to recover the sum so paid in addition to compensation for any loss sustained by reason of the excess of the market over the contract price. *Id.* s. 1734, 1741. The rule of damages laid down by the County Court was the true rule. If the plaintiff had claimed an erroneous rule of damages, which the court did not adopt, it would be no ground of exception to the correct ruling by the court.

The only place where the plaintiff invoked any rule of damages is where his counsel, in reply to a question of the court, said "The purpose of that is to show that by the breach of this contract he had to go into market and buy other slate, and the rule of damages, as I understand, is the difference between the market price that he had to pay and the contract price."

The defendant excepted to proof of what plaintiff paid for other slate to supply the place of that which defendant refused to deliver. The evidence was proper, for although he could

not increase his damages by paying more than the market price, if he bought for less than the market price, the amount of his real loss and not his estimated loss, is the basis of his recovery. 2 Mechem on Sales, s. 1739.

The charge as to the right to recover the advance payment was correct. When the defendant broke the contract he became liable for damages and must pay back the money he had received on account of slate to be delivered. It was not his right to repudiate the contract, and claim to pay the money received in slate.

STAFFORD, J. The plaintiff deals in slate in Philadelphia. The defendant manufactures the same at Granville, N. Y. The parties have dealt with each other for some time. The present action is for failing to deliver slate according to contract. In a letter of April 29, 1899, the defendant offered to supply the plaintiff, after June, not to exceed one thousand squares per month, at stated prices; and two days later the plaintiff, by letter, accepted the offer to the amount of one thousand squares per month for the six months beginning with July. Delivery was to be made on the cars at Granville. These two letters, which make up the contract so far as it was put in words, do not say when payment should be made, nor how. The plaintiff claimed that the only contract in this respect was the one the law would import,—cash on delivery,— while the defendant claimed that the previous course of dealing was understood to govern, whereby the plaintiff was to send his notes about the 15th of each month to cover the shipments of the succeeding month; and the jury were left to say whether there was such an established course of dealing, and whether it formed a part of the present contract. The jury were also told that one thousand squares were due each month, if orders for that amount were seasonably forwarded, and that in view of the evidence they were to say whether there was a well

known usage of trade that such orders should cover a reasonable range of sizes, and, if so, were told that such usage was a part of the contract. They were also told that the defendant was not responsible for any delay caused by the failure of the railroad to furnish cars. The main question was, which party broke the contract? The plaintiff claimed that it was the defendant who first broke it by failing to deliver the one thousand squares due in July. Although the defendant did deliver more than one thousand squares in July, a part were to be applied on a previous and separate contract between the parties, leaving less than one thousand squares to be applied on the contract in question; but the defendant claimed that the plaintiff waived delivery of the full amount due in July under the present contract, in order that the earlier contract might be filled; and that for that reason he was not in default; but that the plaintiff was the first to break the contract, by failing to advance his notes August 15th, as well as by taking an unwarranted position in one of his letters,—that of August 7th. The plaintiff obtained a verdict, and the case is here on exceptions by the defendant, which we shall take up in the order in which they are presented by his brief.

1.    He excepted to the supposed failure to charge that he could not be held responsible for not delivering the contract quantity if the plaintiff had not seasonably furnished him with orders therefor, his evidence tending to show the plaintiff did not keep him supplied with orders.

We think there was no real failure upon this point. The principle contended for was recognized throughout the charge. In stating at the beginning that the contract calls for one thousand squares each month, the court adds, "if orders for that amount are seasonably forwarded." Twice afterwards reference is made to the same condition,—once in saying that the defendant's failure to deliver constituted a breach of the

contract, unless there had been a waiver, or "unless the defendant was excused from completing the delivery for some of the other reasons before stated;" and finally in the sentence, "This brings you back to the question, was the defendant's failure to fill the plaintiff's orders a breach of the contract, or something for which he was excused on the grounds before stated." If the rule was not given more prominence it was probably because the defendant was insisting more strenuously that the orders which were furnished did not cover a sufficient range, leading the court to deal more particularly with that claim, and because it was too obvious to need much comment that the plaintiff could not complain of not receiving what he had not asked for. We are satisfied that the jury could not have been in doubt upon this point.

2. He excepted to the supposed failure to comply with three special requests, and to the charge upon those subjects:

(a) To tell the jury that the letter of August 7th was a demand which the plaintiff had no right to make.

This letter, in its material part, was as follows: "If you don't ship my orders to the exclusion of all others until you have reimbursed me for the advances, I shall put the matter in the hands of my attorney in Vermont and let him do the settling." It was evidently the plaintiff's answer to the defendant's claim that he could not supply all his customers. The court properly told the jury: "The defendant's inability to produce slate fast enough to meet the demands of his customers generally is no defense. The plaintiff was entitled to stand upon his contract, and insist that his orders should be filled."

The plaintiff now insists that the jury might have read the letter as a demand that the defendant should ship slate to the amount of the advancements immediately, and regardless of the usage that the advancements should cover the shipments of the succeeding month. But we are not advised of any evi-

dence which could have justified that reading. The court properly told the jury that this letter in itself did not constitute a breach of the contract. Even an excessive demand would not excuse from a proper performance. *Colby* v. *Reed,* 99 U. S. 560, 564; 25 L. Ed. 486.

August 22d the defendant notified the plaintiff that the contract was at an end because the plaintiff had not put up his notes on the 15th. The plaintiff's answer was that the defendant was in no position to complain, having failed to ship slate to cover the notes already up. The court told the jury that it was not what the parties had demanded of each other in their letters that was to determine who broke the contract, but which one first failed to do what he was bound to do; that the defendant's notice, on the 22d, that the contract was at an end, constituted a breach, unless the plaintiff was already in default by reason of his failure to advance his notes on the 15th; and that whether that constituted a breach depended on whether the defendant had shipped slate enough to cover the previous advancements,—or had been excused therefrom by the waiver of the plaintiff. This we think was correct and sufficient.

(b) That "if the delay in delivery was due in whole or in part to the scarcity of cars, the defendant was not responsible for it."

This request was unsound in form, as it would excuse the defendant for all delay if only a part of it were caused by scarcity of cars; but the charge upon the subject was all the defendant had a right to ask even if his request had been proper.

(c) That if the delay arose from the orders being of insufficient range in point of size, the defendant was not responsible therefor.

This request was substantially complied with. Both (b) and (c) have further clauses based upon the same misreading of the letter of August 7th, already commented upon under (a).

3.   He excepted to the charge upon the measure of damages, which was: "If the plaintiff is entitled to recover, he is entitled to the difference between the contract price and the advanced market price on whatever slate was not actually delivered, and in addition thereto, the balance of the amount paid, for which he has received no slate.   The last item is $573.36.   The undelivered slate was 4,219 squares."

The verdict, omitting interest, was $2,260.96.   If we deduct $573.36, the amount paid, we have $1,687.60.   From which it appears that the jury allowed forty cents per square.

The rule laid down is the rule of our cases.   *Worthen* v. *Wilmot,* 30 Vt. 555; *Hill* v. *Smith,* 32 Vt. 433; *Copper Co.* v. *Copper Mining Co.,* 33 Vt. 92.   The defendant does not question this, but contends that a different rule had been adopted, against his objection, as the evidence was going in, and that the same rule should have been adhered to in the charge.   What the exceptions show is this:

The plaintiff in his opening called witnesses whose testimony tended to show that during the period covered by this contract they sold and delivered to the plaintiff, at several times, various given quantities of slate at prices which they stated, ranging from thirty to fifty cents per square higher than the prices fixed by the contract in question.   This evidence being objected to, the plaintiff claimed that by reason of the breach of this contract he was compelled to purchase from others to fill his orders, and that the extra price thus paid constituted the measure and proof of his damages.   To the admission of this evidence the defendant excepted, but that exception is not relied upon here.   The defendant introduced no evidence touching the market price.

To the rule as to the measure of damages in the charge, the defendant excepted "especially for that the other rule was invoked by the plaintiff in his opening case, and the ruling re-

lied upon by the defendant; so that the defendant introduced no evidence bearing upon the rule as stated." The defendant in his brief says that the plaintiff's testimony tended to show that the market price ran fifty cents per square higher than the contract price throughout the period covered by the contract; and the plaintiff in his brief admits it. The plaintiff's evidence also tended to show that the deficiency was not fully supplied by these other purchases. So that, although the verdict was evidently not for the full rise in market price, we cannot say from the record before us that it did not exceed the difference between the contract price and the price actually paid; and for that part, at least, which was not supplied by other purchases, the damages must under the charge have been fixed by the market price. Indeed, the position now taken by the plaintiff himself is that the market price should govern only as to the quantity which he did not supply, and that as to the residue the price actually paid, being less than the market price, should control. But this is not the rule that was given to the jury. In view of the position taken by the plaintiff as the evidence went in, and the defendant's apparent reliance thereon, we think the damages ought to have been limited, at least to the extent of the slate supplied by other purchases, to the prices actually paid therefor.

This exception is sustained.

4. He also complains of this portion of the charge because it permits the recovery of the advancement for which no slate had been received.

His evidence tended to show that he offered to deliver this slate, but the plaintiff withdrew his orders and would not receive it. Just when the offer was made does not appear, but we infer from the argument, as we should also be required to infer from the case itself in support of the judgment, that it

was after breach, and after the expiration of the time within which the slate was to be delivered.

Upon breach the plaintiff's right of action accrued, and could not be defeated nor affected by a subsequent offer to perform. *Gould* v. *Banks,* 8 Wend. 562, 24 Am. Dec. 90. Even the right to pay in specific goods rather than in cash, although an option of the debtor as our cases hold, must be exercised within the contract period; otherwise, the creditor may insist upon his money. *Smith* v. *Coolidge,* 68 Vt. 516, 35 Atl. 432, 54 Am. St. Rep. 902.

This exception is not sustained.

5.   He excepted to the admission of evidence touching the market value of slate in July and urges that there could be no default then, as the defendant was entitled to the whole of that month in which to deliver the first installment.   But there is another view.   To quote from the charge, which is referred to as containing a statement of the respective claims: "The theory of the plaintiff is that after his contract was made, the price of slate materially advanced, and that the defendant put him off in every possible way in favor of his customers who were paying the higher price, and that the various matters now urged by way of defense are pretences."   In support of this theory he was entitled to show how the market price ranged during the whole period covered by the contract.

*Judgment reversed and cause remanded.*