**SECURITY UNION INS. CO. v. GULLETT.**

No. 12429.

Court of Civil Appeals of Texas. Fort Worth.
Feb. 21, 1931.

Rehearing Denied March 14, 1931.

BUCK, J.

W. A. Gullett sued the Security Union Insurance Company, a corporation, for compensation alleged to be due him by reason of personal injuries received on July 31, 1929, while he was working for the Everetts Drilling Company at Walters, Okl. He alleged that the average daily wage for an employee of the same class as he was, working substantially all of the immediately preceding year, was $5 a day. He alleged he was 19 years of age, and prior to said injuries had been exceptionally strong and robust; that he possessed a fair education and was reasonably intelligent; that he was a good worker and had always given satisfaction to his employer. Therefore, he averred, within two or three months of the time of his injuries his average weekly wage would have been $35 a week; that the contract of employment was entered into in Wichita County, and that at the time of his injuries his employer was engaged in a business subject to the Workmen's Compensation Act of the state of Texas; that within 30 days of the time of said injuries the plaintiff notified the Industrial Accident Board and the employer of his injuries, and thereafter, within six months of the time of said injuries, plaintiff filed his claim for compensation with the Industrial Accident Board in the manner prescribed by law, claiming compensation of said defendant by reason of said injuries and for the disability produced by said injuries. He alleged that the accident had injured his index finger, causing it to be stiff, and also had necessitated an operation for appendicitis, and that he was totally disabled.

He further alleged that the Industrial Accident Board set his claim for hearing on November 26, 1929, and thereafter on the 4th day of December, 1929, said board made its final ruling and decision in said case; that thereafter on the 9th day of December, 1929, the plaintiff gave notice in writing to the board that he was not willing and would not consent to abide by the ruling and decision of the board in said cause, and that he would file a suit within 20 days of said date in a court of competent jurisdiction for the purpose of setting aside the award of the board and for such relief as he might be entitled to under the law, and did on December 23, 1929, file in the district court the claim to set aside the judgment and award of the Industrial Accident Board, and for general relief.

Plaintiff further alleged that he had been forced to employ an attorney, and had assigned to him one-third of his claim, which was the usual and customary fee for such services and the amount prescribed by the Workmen's Compensation Act. He further alleged that he had a wife and a small child who were dependent on him for support;

Bullington, Boone, Humphrey & King, of Wichita Falls, for appellant.

E. W. Napier, of Wichita Falls, for appellee.

that neither he nor his wife owned or possessed any property of any kind whatever and that they have no income or means of support other than the proceeds of the labor of plaintiff; that he is indebted in large sums to various persons, including a hospital bill, which debts have been incurred since his injuries, for which he claimed compensation in the sum of $500, and that in all probability he will be compelled to have an operation and medical treatment which will require several hundred dollars; that by reason of these facts he should be entitled, under the law, to a lump sum settlement, for which he prayed.

Defendant pleaded a general demurrer and certain special exceptions and a general denial, and further pleaded that any injury which the said plaintiff received did not cause his appendicital operation, but that the only injury he received and for which he put in a claim before the Industrial Accident Board was an injury to his finger which has been fully and completely paid.

The cause was tried before a jury on February 25, 1930, and the jury in answer to special issues found that (1) plaintiff, on July 31, 1929, fell upon or against the rotary or some part thereof; (2) that he suffered internal injuries therefrom; (3) that the plaintiff's falling against the rotary table was the proximate cause of his internal injuries; (4) that the plaintiff was incapacitated to work by reason of such internal injuries; (5) that he was totally incapacitated to work for any period of time by reason of such injuries; (6) that such disability was permanent; (7) that plaintiff suffered an injury to his left hand by reason of the accident; (8) that such injury caused a disability; (9) that the injury to his hand caused a disability for a period of 35 days; (10) that the injury to his index finger of his hand caused a disability of 50 per cent.; (11) that the average weekly wage of W. A. Gullett at the time of the injury, which was deemed just and fair to both parties, was $35 a week; (12) that the daily wage of an employee of the same class, working substantially the whole of the year immediately preceding the time of the plaintiff's injury, was $6 a day; (13) that plaintiff was entitled to a lump sum settlement; (14) that plaintiff was not discharged on or about July 29, 1929, from his employment.

The court entered judgment for plaintiff against the insurance company for the sum of $6,443.85, from which judgment the defendant has appealed.

## Opinion.

 It will be remembered that the plaintiff sued the Security Union Insurance Company, and no special exception to the designation of the employer as the Everetts Drilling Company was urged in the court below. On a motion for new trial it was urged that there was a variance between the allegation that the employer was the Everetts Drilling Company and the evidence that C. A. Everetts was the employer named in the insurance policy; whereupon the court permitted the plaintiff to amend his pleadings by a trial amendment, in which he alleged that the Everetts Drilling Company and C. A. Everetts are one and the same person, and that plaintiff was employed at the time stated in his petition by the said C. A. Everetts. Appellant urges here, as he did in his motion for new trial, that the trial court erred in allowing a trial amendment after the jury's verdict was rendered over the objection of defendant.

The evidence further shows that the insurance company had paid the claimant $17.30, and had previously paid to N. L. Hindgeons $64.43, a total of $81.73, and had made no objection to the claim on the ground that it did not insure the Everetts Drilling Company, but did insure C. A. Everetts.

In Kelsey v. Myers, 29 S.W.(2d) 855, 858, the Court of Civil Appeals at Eastland said: "Further, to present the question of variance as one of law, the evidence should have been objected to on that ground at the time it was offered, or when the variance became apparent, the counsel should have moved to exclude the evidence, or at least in some appropriate way raised the question and given the trial judge an opportunity to pass on it. Dallas Plumbing Co. v. Harrington (Tex. Civ. App.) 275 S. W. 190, and authorities therein cited, and 21 R. C. L. p. 606, § 149."

It is well settled in this state that the question of variance is never material in the absence of surprise. Certainly the defendant could not have claimed to have been surprised in this case, since, from the time that the claim was filed before the board, many months before the suit was filed, the claimant and the Industrial Accident Board always named the employer as the Everetts Drilling Company. The defendant at no time ever denied its liability to this plaintiff, but had actually paid him some compensation. It had paid his hospital bills and doctors' bills. Its own receipts and correspondence show that C. A. Everetts was the employer, and there was not even a suggestion on the part of the defendant of surprise.

In 49 Corpus Juris, p. 810, § 1191, it is said: "Modern authorities hold that no variance between the allegation of a pleading and the proof offered to sustain it shall be deemed material if the adverse party is not surprised or misled to his prejudice in maintaining his action or defense upon the merits."

That text is supported by authorities from various jurisdictions, among them about twenty-five Texas cases, some of which are McDonald v. Cabiness, 100 Tex. 615, 102 S. W. 721, Wilson Hydraulic Casing Pulling Mach. Co. v. James (Tex. Civ. App.) 271 S. W. 424, and other cases.

In Federal Surety Co. v. Ragle, 25 S.W.(2d) 898,· 901, this court said: "We overrule as immaterial the further contention that the evidence shows that the Shaw & Rathke is a corporation, and not a partnership as alleged by the appellee in his cross-action for compensation. This fact only incidently appeared in the testimony of a witness while being examined. It was not made the basis of a defense in any way. There is no contention that Shaw & Rathke were not subscribers or that appellee was not,employed by them. At most it can amount to no more than a variance in matter not in issue. In every case, to be fatal, a variance must be such as to surprise or mislead the parties to be charged. See Sealy Cotton Co. v. Gustafson & Spencer, Inc. (Tex. Civ. App.) 258 S. W. 911."

It is urged under the authorities cited that appellant is estopped to raise the question. See, also, Texas Employers' Insurance Ass'n v. Newton (Tex. Com. App.) 25 S.W.(2d) 608.

Appellant relies upon the case of New Amsterdam Casualty Co. v. Harrington, 290 S. W. 726, by the Commission of Appeals, in which it is said:

"The evidence shows that a copartnership composed of Gragg and others was the employer, and that Harrington was engaged by Gragg to work for the copartnership. And though the evidence, by reason of the notice given the board by the casualty company, may show that the company by the issuance of the policy intended to provide for the payment of compensation to the employees of the copartnership, and that the policy was issued in the name of Gragg for the use and benefit of the copartnership and its employees, thereby in law making the copartnership the holder of the policy, yet there is no allegation contained in Harrington's pleadings to support a cause of action based on these facts. A copartnership is a legal entity distinct from the individual members composing it, and the allegation that Gragg was Harrington's employer is not shown by proof that a copartnership composed of Gragg and others was his employer.

"Our statutes provide that the judgment of the court shall conform to the pleadings, the nature of the cause proved, and the verdict. While the judgment in this case conforms to the pleadings and verdict, it does not conform to the nature of the cause proved. The proof is at such variance from the cause of action alleged that the court would not be warranted in sustaining the judgment. Western Union Tel. Co. v. Smith, 88 Tex. 9, 28 S. W. 931, 30 S. W.·549; Maddox v. Summerlin, 92 Tex. 483, 49 S. W. 1033, 50 S. W. 567; Bank of Garvin v. Freeman, 107 Tex. 523, 181 S. W. 187."

Upon this alleged variance, the Commission of Appeals held that the judgment of both courts should be reversed and the cause remanded. This judgment was approved by the Supreme Court.

In Fowler Commission Co. v. Charles Land & Co., 248 S. W. 314, by the same section of the Commission of Appeals that wrote the New Amsterdam Case, the court held that, to constitute a variance, the difference between pleadings and proof must be such as to mislead or surprise.

In McCord-Collins Co. v. Pritchard, 37 Tex. Civ. App. 418, 84 S. W. 388, 389, writ of error denied, it was held by this court that, where the plaintiff charged that defendant was liable for injuries to him, but inadvertently misnamed the defendant, the misnomer was waived, and it was immaterial whether defendant was ever properly served with citation or whether it was correctly described in the petition or not. Judge Speer, speaking for this court, said: "In the view we take of the case, the eighth special finding of the jury, to the effect that the original answer, filed February 12, 1900, and the amended answer, filed April 21, 1900, were filed for and on behalf of the appellant, if supported by the evidence, is decisive of all questions in this case, and necessarily leads to an affirmance of the judgment. Of course, if appellee really intended to sue the appellant—and the jury has found that he did—and if appellant appeared and answered his suit, it is immaterial whether it was ever served with citation, or whether it was correctly described in his petition. An answer failing to suggest the misnomer would amount to a waiver of such irregularity, and authorize a judgment against it."

We are inclined to think that the variance as to the employer was waived by the defendant insurance company, and that it becomes immaterial, although the case of New Amsterdam Cas. Co. v. Harrington (Tex. Civ. App.) 11 S.W.(2d) 533, .seems to be to the contrary.

■ It is urged that the supersedeas bond filed in the court below did not give the appellant the right to appeal, and that the bond filed in answer to a motion of appellee to dismiss the appeal is insufficient. The bond given in the court below is signed by the Security Union Insurance Company and attested by Christie and Hobby, Inc., M. B. Rankin, secretary. It was urged by appellee, in his motion to dismiss, that neither of the persons purporting to sign as sureties intended to sign as sureties, and that they were insolvent. In answer to the motion to dismiss and the order of this court allowing appellant to file a new bond, appellant has filed a new bond which is an appeal bond, filed by the receiver of the insurance company, it having later gone into a receivership, and the surety on the bond, is the Globe Indemnity Company. In the absence of any showing that said Globe Indemnity Company is not authorized to make this character

of bond, we do not see any objection to the bond last filed, and overrule the motion to dismiss for lack of sufficient bond.

Article 2272, Rev. Civ. Statutes of 1925, provides: "In all cases carried by appeal or writ of error from the district or county court to the Court of Civil Appeals or to the Supreme Court, in which a supersedeas bond shall be given, and whenever the said bond shall become insufficient by reason of the insolvency of the sureties on such bond, or from any other cause, the court in which the said appeal or writ of error is pending, shall, upon proper showing of such insufficiency being made, require the giving of additional supersedeas·bond in like amount as the original, to be approved by the clerk of the court in which said appeal or writ of error is pending." See Prusiecki v. Ramzinski (Tex. Civ. App.) 81 S. W. 549.

■ Where appellant files a defective bond within 20 days after judgment and thereafter substitutes a valid one, the appeal will not be dismissed for failure to file a bond within the time limited. Eaton v. Klein (Tex. Civ. App.) 141 S. W. 828. A motion to dismiss an appeal on account of insufficiency of appeal bond will be overruled, where appellant tenders bond which meets objections made. Turner v. First Nat. Bank (Tex. Civ. App.) 234 S. W. 928. Defects in amount and number of sureties may be cured by filing a new bond. Shelton v. Wade, 4 Tex. 148, 51 Am. Dec. 722; King v. Hopkins, 42 Tex. 48; Tynberg Case, 76 Tex. 418, 13 S. W. 315; Ricker v. Collins, 81 Tex. 662, 17 S. W. 378; Davis v. Estes, 4 Tex. Civ. App. 207, 23 S. W. 411. We overrule the motion to dismiss.

■ Appellant further urges that the court erred in permitting the trial amendment setting up the allegation that the Everetts Drilling Company and C. A. Everetts were one and the same. An amendment is allowed in the discretion of the court for the purpose of curing a defect in the pleadings. Johnson v. Bingham (Tex. Civ. App.) 251 S. W. 529. In that case the court permitted a trial amendment to be filed after a verdict had been returned, and the appellate court discussed the propriety of such a proceeding at some length. See Rea v. Johnson (Tex. Civ. App.) 270 S. W. 1077; Thomas v. Basden & Carrell (Tex. Civ. App.) 22 S.W.(2d) 959; Employers' Casualty Co. v. Irene Independent School District (Tex. Civ. App.) 286 S. W. 539; Dancy v. Peyton (Tex. Civ. App.) 282 S. W. 819. We overrule this assignment.

■ Under section 19, article 8306, of the Revised Statutes (Workmen's Compensation Act), it is provided: "If an employee who has been hired in this State sustained injury in the course of his employment he shall be entitled to compensation according to the law of this State, even though such injury was received outside of the State."

In other words, appellant urges that it was necessary under this article for plaintiff to have negatived this proviso, and to have shown in his pleadings that he had filed no claim for compensation in the state of Oklahoma and under the compensation laws of that state, and that he did not elect to pursue his remedy and recover in the courts of Oklahoma, the state where the injury occurred. He cites the case of Mingus v. Wadley, 115 Tex. 551, 285 S. W. 1084, in which it was held that, in a suit to set aside the award of the Industrial Accident Board, each step toward collection of compensation claims from time of injury to final adjudication is mandatory and all rights under the Workmen's Compensation Law are to be enforced strictly, according to the statutory provision. He cites the case of Nobles v. Texas·Indemnity Ins. Co. (Tex. Com. App.) 12 S.W.(2d) 199, where the principle was announced that the burden of proof was upon the complainant to establish each fact as shown in the case. We see no ground to sustain the contention made, and overrule it.

In its objections to the charge of the court, appellant, defendant here, requested the court to give a definition of the word "permanent." This the court did not give. There is in the charge an instruction defining the words "total incapacity," which seems to be satisfactory to the appellant. But should the court have defined the word "permanent" as applied to "disability"? Some of us are of the opinion that such definition should have been given. See Texas Indemnity Ins. Co. v. James (Tex. Civ. App.) 297 S. W. 254; Robertson & Mueller v. Holden (Tex. Com. App.) 1 S.W.(2d) 570. The writer thinks that the meaning of the word "permanent" is so well known by the average citizen and juror that no definition is necessary, but some of the court think that the word should have been defined, and that failure to do so constituted error.

■ We sustain appellant's assignment directed to the failure of the evidence to support the conclusion of the jury that the plaintiff below was permanently injured. Dr. Parnell is the only medical witness who testified upon this point. He said: "Mr. Gullett is having a good deal of trouble now, has been having a good deal of trouble ever since he was hurt, and he is having as much trouble practically now as he was the first time that I examined him. I do not now remember exactly how long that has been, but I presume that it has been a couple of months, as well as I can remember, and he is totally disabled at the present time from doing anything, that is in the way of work, that would require any exertion, anything that we would call labor and which is due, in my opinion, to adhesions having formed both in-

ternally and externally—we do not know how much damage there is in there, but I judge there has been, and on the outside we can see that the skin has adhered to the tissue, the tissue is the covering over the muscle; it is a strong covering put there to cover the muscle. It is a soft fibrous coat. * * * There are a great many people who have some adhesions that do not cause a great deal of trouble. Yet there are others that are absolutely disabled from adhesions. * * * With reference to whether this boy is likely to improve or not, that is problematical I believe that the boy is going to have further trouble, I believe that it will be six months before he can expect to recover to any appreciable degree, and beyond that time I would hate to venture a guess, because it is just a gamble, he may improve or he may not. He might possibly get worse; we cannot tell about that. There is no way in the world to tell what the future is going to bring about. It is true that he may improve in a few months or get worse. He may improve in a slight degree and not improve completely. Now I do not think that he will ever be completely recovered—experience has shown that in any surgical risk, that you always find adhesions."

On cross-examination, he testified: "I say that within six months he may probably get better. He could not do anything in the way of labor now. Take bookkeeping or something like that, he could sit down and stay in a position, in other words, he could do mental work. He might be able to do some work within six months. I cannot tell. It is just venturing a guess, and I do not want to put a guess in the testimony. Sometimes we have to operate for adhesions, following an operation. Sometimes a patient will get along all right. I did not see this boy for several months after he claimed to have gotten hurt. I do not know what caused the appendicitis and do not know what caused the adhesions, only from what information I could gather—his statement and the history I got. Dr. Kimbrough operated, and Dr. Leake, of Burkburnett. I did not see him at that time. I know no more about what caused the appendicitis than just the history of the case."

■ This is substantially all of the evidence that was given on whether or not the plaintiff below was permanently incapacitated. The plaintiff's father, W. T. Gullett, and his wife, Mrs. W. A. Gullett, both testified, but neither testified to facts upon which the jury would have been authorized to find that the plaintiff was permanently disabled. Where an injured person has lost his hands or arms, or has lost his legs or feet, or is blind by reason of his injuries, the lay witness may testify that he cannot recover the use of the lost limb or organ, but not in this character

of case. We all think that this assignment should be sustained and the case reversed.

■ Complaint is also made upon an instruction of the court to the jury that the burden of proof was upon the plaintiff to establish by a preponderance of the evidence the affirmative of certain issues, and to establish by a preponderance of the evidence the negative of two other issues. We do not see any objection to this charge on the ground stated. In Linn Motor Co. v. Wilson (Tex. Civ. App.) 14 S.W.(2d) 867, 868, the trial court submitted the cause to the jury upon special issues and told them that the jury were the sole and exclusive judges of the facts proved, the credibility of the witnesses, and the weight to be given the testimony, but that they would receive the law of the case from the court as was given in the charge, then gave the jury the following charge on the burden of proof: "The burden of proof rests upon the plaintiffs to establish by a preponderance of the evidence of the facts necessary to their recovery."

That was a charge upon the burden of proof applying to the entire case and not applied to special issues. We think that case easily distinguishable from the one before us.

For the reasons heretofore given, the judgment of the trial court is reversed, and the cause is remanded for a new trial not inconsistent with this opinion.