## VANN et ux. v. CAMERON. COUNTY.
### No. 3779.

Court of Civil Appeals of Texas. El Paso.
Jan. 5, 1939.

Rehearing Denied Jan. 26, 1939.

West & Hightower, of Brownsville, for plaintiffs in error.

Chas. C. Bowie, Co. Atty., of San Benito, and J. W. Wiech and Wm. Scanlan, Asst. Co. Attys., both of Brownsville, for defendant in error.

WALTHALL, Justice.

We adopt for this Court the statement of the nature and result of the suit made by defendant in error in its brief, and which is substantially as follows:

This is a suit in condemnation brought by Cameron County, Texas, defendant in error, for rights of way for flood control purposes in said County, over and across lands belonging to Walter W. Vann and wife, plaintiffs in error. The matters to be considered are stated in their chronological order, as follows:

In the year 1925, Cameron County undertook the construction of a flood control system with the aim of better controlling flood waters of the Rio Grande in this County, it being the intention of Cameron County to construct levees along the Rio Grande between the north bank of the river and the Military Road, a paved highway which in a sense parallels the said river. It became necessary for the County to obtain rights of way from the respective land owners along the river in order that the construction of the levee could be effected, and Mr. Walter W. Vann and wife, plaintiffs in error, were found to be owners of a tract of land containing approximately 114 acres, same being a strip of land between the Military Road on the north and the Rio Grande on the south, running north and south between parallel lines, which tract is colored in pink and more clearly shown on page 36 of the statement of facts.

The County Engineering Department, under the leadership of Mr. W. O. Washington, County Engineer, found that immediately east of the Vann tract was Villitas Banco No. 24, which was a tract of land that had been cut off and placed on the American side of the river by a change in the course of said river, and that on either side of said Banco there were extensive deposits of quicksand, which type of soil was not conducive to levee construction for flood control purposes. The said engineers found further that, along the western boundary line of the E. B. Austin tract, which latter tract lies adjacent to and immediately west of the tract in question, there existed the main canal of the La Feria Water Control and

Improvement District, running north and south, and that about midway on the Vann tract between the Military Road and the river, a lateral canal, called the Longoria Canal, running east and west, crossed the Vann land and the Austin tract, joining the La Feria main canal on the western boundary of the Austin tract, and that prior to 1925 the southern bank of said canal on the Vann tract had been used as a levee to combat floods of the Rio Grande, by the owners and residents of the vicinity. Because of these facts, the engineers, in 1926, determined that the proper location for the levee across the Vann tract was along this lateral canal, which is referred to in the record as the Longoria Canal and which, incidentally, is the location for the levee proposed by the International Boundary Commission. However, Mr. Vann and other owners in the vicinity, notwithstanding the judgment of the enginers, insisted that the levee be placed closer to the river and, bowing to their will, Cameron County constructed the levee closer to the Rio Grande, crossing the Vann tract a short distance from the river, between the letters C and D to be found on the map, Statement of Facts, page 36. Mr. Vann and wife, however, at that time, granted to Cameron County a blanket easement over the said 114 acre tract "with the further right, in the event that said flood protection works shall, by reason of subsequent changes in the currents of the Rio Grande, or other causes, become insufficient for the purpose for which they are built, that said County of Cameron may further enter in and upon said premises and erect, construct, maintain and repair such other and additional flood protection works as may be necessary to accomplish such purpose." Although the river front levee on the Vann tract has never been destroyed by floods, that portion of the levee which crosses the estero surrounding Villitas Banco No. 24, constructed over the quicksand condition hereinabove described, was, in 1935, consumed by a flood, as predicted by the engineers, and all lands, including the tract of plaintiffs in error, were inundated from the Longoria Canal south.

In 1933, the United States Government allocated certain funds to the Department of State for work upon the Flood Control Project in Cameron County, Texas, but, as a condition precedent to carrying on such work, required that Cameron County secure and submit evidence of adequate title

vested in the County to lands and easements necessary for such works, and that such County be prepared, if and when required so to do, by good and sufficient title to convey such property and rights to the United States, the procedure being that the County Engineer, upon receipt of notice from the Secretary of State or such other officer as may be designated by him, requesting the conveyance of such designated lands, cause to be conveyed to the United States title in form and extent satisfactory to the said Secretary of State or other officer designated by him to all lands or rights in lands so designated in such notice or notices, for use in connection with or incident to flood control work, as more fully set out in the order of the Commissioners' Court of Cameron County, Texas, which said order further authorized and directed and caused its officers and employees to do any and all things necessary or useful in compliance with the agreement therein contained.

The United States of America, acting through the Department of State and more particularly through Mr. J. L. Lytel, Project Engineer, under date of July 25, 1936, addressed a request to the County Judge of Cameron County, Texas, requesting for use in connection with the construction of the Lower Rio Grande Flood Control Project, the conveyance to the United States, by appropriate conveyance, in form and with title as may be required by the Attorney General of the United States, portions of land out of the Vann tract hereinabove referred to, one containing 5 acres of land for levee purposes; the other being a strip of land along the river bank containing approximately 2.88 acres for revetment purposes.

Thereafter, Cameron County, through its Right of Way Agent, by letter dated April 10, 1937, offered to purchase an easement from the said Walter W. Vann and wife, over the said lands for flood control purposes, which said offer was rejected by plaintiffs in error.

Thereafter, condemnation proceedings were instituted by Cameron County, Texas, by petition filed with the Judge of the County Court of Cameron County at Law, on April 23, 1937, seeking an easement over the strips of land for levee and revetment work, as hereinbefore stated.

Thereafter, under date of April 23, 1937, said Judge of the County Court of Cameron County at Law appointed three disinterested freeholders in said Cameron County to assess the damages under said condemnation, which said Special Commissioners, under date of April 23, 1937, qualified by taking the oath required by law, and signed an order on April 24, 1937, setting the time and place of hearing for the 12th day of May, 1937, at 10 A. M. in the County Court Room at the Courthouse in Brownsville, Cameron County, Texas, a copy of which order giving notice of the time and place of hearing was served upon Walter W. Vann and Mrs. Walter W. Vann on April 28, 1937, by the Sheriff of Kerr County, Texas. Plaintiffs in error filed with said Special Commissioners on May 12, 1937 their objections and exceptions to said proceedings, and an award in writing, dated May 12, 1937, and signed by said Special Commissioners was filed with the Judge of the County Court of Cameron County at Law on May 19, 1937.

Thereafter, on May 21, 1937, plaintiffs in error filed their objections to the decision of Commissioners herein and on November 12, 1937 filed their first amended objections to the decision of the Commissioners herein, on which latter pleading and plaintiffs' original petition this condemnation proceeding went to trial in the County Court of Cameron County at Law.

Defendant in error timely presented its trial amendment setting up that the proper officers of the United States of America, acting pursuant to an Act of Congress approved August 19, 1935, 49th Stat. 660, had requested that Cameron County acquire an easement over the lands involved in said suit, and that the said Cameron County desired to acquire and convey such lands to the United States pursuant to Acts of 1934, 43rd Legislature, 4th Called Session, page 71, Chapter 29 (now Art. 7880—147v, Vernon's Texas Civ.Stats.1936), and the Acts of 1937, 45th Legislature, S.B. 222, c. 202 (now Art. 7880—147v(1) Vernon's Tex.Civ.St.Supp.1938), and the said cause proceeded to the jury by the court's charge in special issues, and thereafter judgment was entered based on the jury's findings to said special issues. Under date of November 27, 1937 plaintiffs in error presented their motion for new trial, which said motion was overruled by the Court on said date, and on March 19, 1938 plaintiffs in error filed their petition for writ of error and their cost bond on writ of

error, and citation in error was thereafter duly served on Cameron County, Texas, thereby bringing this case by writ of error to the Court of Civil Appeals for the Fourth Supreme Judicial District, from which it was transferred by order of the Supreme Court to the Court of Civil Appeals of the Eighth Supreme Judicial District.

## Opinion

In their first two propositions plaintiffs in error submit that at the close of the evidence the court should have dismissed the case for the reason that these condemnation proceedings were not instituted under the direction of the Commissioners' Court; that the only evidence offered by defendant in error purporting to show the action of the Commissioners' Court was a unilateral, meaningless and void resolution of the Court. We think, however, plaintiffs in error were untimely in raising question of capacity to sue, and also that the resolution of the Commissioners' Court in evidence shows these proceedings were instituted under its direction under Article 7880 and the subdivisions thereof, Vernon's Texas Statutes, 1936. Defendant in error's original petition alleges that Cameron County, in instituting the proceedings, was "acting herein by and through its Commissioners' Court by order duly passed on the 23rd day of April, 1937, and presents this, its petition for condemnation of an easement over certain lands situated within the County of Cameron and State of Texas." The issues were joined under that petition. We do not find in the record a denial of the statement in the petition.

■ Plaintiffs in error raise the questions presented for the first time in their motion for a new trial. The resolution of the Commissioners' Court was filed in evidence. The resolution is lengthy and we make only a brief statement of its contents. It recites the time and place of the session of the Court; shows the presence of all the members of the Court; shows the consideration of the resolution by the Court in session, and that whereupon the proceedings before the Court were had; shows after referring to the conducted studies by the American Section of the International Boundary Commission of the United States and Mexico relating to flood control along the lower Rio Grande, the Commission has developed plans for certain needed work by way of construction, reconstruction, alteration, improvement,

extension and maintenance of the flood control system in Hidalgo and Cameron Counties, Texas, referred to as the Flood Control Project; and that provision has been made by the Government of the United States for the allocation of funds to the extent stated for its accomplishment to the extent of said funds; and that it is a condition precedent to the carrying on of such work that the County in which such work shall be located shall do the things there stated; and that benefit will accrue to Cameron County by reason of the protection against the floods; it was therefore resolved by the Commissioners' Court of Cameron County that in consideration of the benefits and advantages to the County of Cameron and its inhabitants from the expenditure of the money in the improvement of the flood control system, the County will and hereby agrees: (Then follow in a number of sections, stated at much length, the matters and things Cameron County will do and agrees to do.) At the conclusion of the resolution of which the above is a brief statement of some of the matters contained therein, the resolution concludes with the statement that the resolution was put to a vote and unanimously adopted, and signed by the County Judge.

The above resolution, we think, complies with Article 3264a of the Revised Civil Statutes of this State in stating the procedure to be followed in the exercise of eminent domain.

■ The objection that the proceedings were not instituted under the direction of the Commissioners' Court goes only to the capacity of Cameron County to sue and, to be available, should have been raised at an earlier time than in the motion for a new trial, and, we think, by a plea in abatement. 1 Texas Jurisprudence, page 132, par. 96, and references thereunder. In Johnston v. Galveston County, Tex. Civ.App., 85 S.W. 511-516, writ of error dismissed, in which the point was raised that the condemnation proceedings were void because it did not appear from the record that the Commissioners' Court had ever made and entered an order or resolution providing for the construction of a sea wall, but an order was in evidence which defined and described lands needed for the establishment, location, construction and maintenance of the sea wall, the Court held [page 515]: "The orders of the commissioners' court above mentioned

which were introduced in evidence are, we think, sufficient to show that the commissioners' court of Galveston county had determined that it was necessary for the county to construct a sea wall. No particular form of order was necessary, and any order of the court, however expressed, which indicated that the court had reached a determination to construct the sea wall, was sufficient."

In the above Johnston v. Galveston County Case the case proceeded under Article 6832 of the Statute which authorizes County Commissioners' Court of counties bordering on the coast of the Gulf of Mexico to construct the sea wall. The statute provides that before exercising the power of eminent domain there given, the Commissioners' Court shall, by order or resolution duly entered on the minutes of the court, define and describe the lands needed, and determine whether an easement or fee simple estate in said land shall be taken; while the statute under which the instant case proceeded is Article 3264, which requires only that proceedings shall be instituted under the direction of the Commissioners' Court and in the name of the County.

■ Plaintiffs in error's first two propositions, if they present errors, they are harmless and are overruled.

The third and fourth propositions assign error in not dismissing the case at the close of the evidence because (1) the undisputed evidence showed that the matter of condemning the land was for and on behalf of the United States and not for and on behalf of Cameron County, and (2) because defendant in error's amended pleading showed an abandonment of the purported County business in prosecuting this proceeding and at the same time showed that the purpose and intent of the suit was to acquire the land for and on behalf of the United States. We will consider the two propositions together. They refer to the same authorities for support. In defendant in error's petition in condemnation it is alleged, in substance, that Cameron County desires, and that it is necessary, that it have for use in connection with the construction of its levees, dikes, floodways, drainways and revetment works easement over the land involved. In the course of the trial Cameron County was permitted, over objection, to amend its pleading wherein it is alleged that the proper officers of the United States of America had requested the acquisition of easements over this land in connection with a Federal flood control project. In support of this amendment to pleading defendant in error introduced in evidence a letter dated July 25, 1936, written by J. L. Lytel, Project Engineer for the International Boundary Commission of the United States and Mexico, United States Section, addressed to the County Judge of Cameron County, in which Lytel stated, "It is requested that, for use in connection with the construction of the Lower Rio Grande Valley Flood Construction Project, there be conveyed to the United States by proper conveyance, as may be required by the Attorney General of the United States, the easements in question, describing them." Immediately upon the commencement of the trial counsel for plaintiffs in error asked counsel for defendant in error whether the United States had answered in this case and whether it was in any manner represented in this trial, to which inquiry counsel for defendant in error replied: "It is agreed that the United States has not answered and is not participating in this suit." This agreement was never abandoned or modified.

At the outset of the trial defendant in error proceeded with its evidence as provided in Article 3264, to the effect that the flood control project in question was then undertaken by Cameron County. Without quoting the evidence, it developed from the testimony of Bradley Mason, Chief of the Field Staff of the International Boundary Commission, W. F. Heath, Assistant Engineer with the International Boundary Commission, and Art Moore, an Assistant Engineer of the Commission, that each in their several capacities was engaged on the Vann land under the direction of the District Engineer of the International Boundary Commission. It was at that point in the trial that defendant in error filed its trial amendment, as above stated, and as requested by the Federal officers, acting pursuant to an Act of Congress approved August 19, 1935, in connection with the Lower Rio Grande Flood Control Project, and that Cameron County desired to acquire and convey the land to the United States pursuant to Acts of 1934, 43rd Legislature, Fourth Called Session, page 71, Chapter 29, and Acts of 1937, 45th Legislature, S.B. 222, c. 202.

Plaintiffs in error submit that from the above statement of the evidence a juris-

dictional question is involved similar to that in the case of Wilbarger County v. Hall, Tex.Com.App., 55 S.W.2d 797, and Security Union Insurance Co. v. Gullett, Tex.Civ.App., 36 S.W.2d 1085, and that the trial court should have dismissed the case.

The case here must be tried as it was tried in the lower court, that is, with the facts as pleaded by the defendant in error in its trial amendment setting up the statute authorizing the proceedings by which Cameron County had undertaken to acquire the land involved for flood control purposes and convey same to the United States.

We think Article 7880 of the Vernon's Texas Civil Statutes 1936 by its several sections, without quoting or further referring to them here, authorizes Cameron County, in its condemnation proceedings, to do that which it has undertaken to do by its resolution and pleadings, and by subdivision 147v of the Act to cooperate with the United States in flood control works. Cameron County proceeded under the legislative authority given by the Act above referred to, which specifically authorizes the proceedings undertaken by Cameron County, the third section of the Act being retroactive, on October 28, 1933, passed the resolution above referred to agreeing to do the things necessary to be done to obtain the construction and maintenance of flood control works in that county by the United States. The trial amendment, we think, was properly granted (Security Union Ins. Co. v. Gullett, supra; 33 Tex.Jur. page 519), and thereby obviated the objection, if any, that might have been made under Wilbarger County et al. v. Hall, Tex.Com.App., 55 S.W.2d 797, and relied upon by plaintiffs in error. The pleadings and the proof show public use of the lands sought to be condemned; the necessity for such land was not before the trial court, it being political in its nature and not judicial.

After proof made by witnesses above referred to, engineers of the International Boundary Commission, by A. Bradley Mason that a survey of the Vann land for levee and revetment purposes had been made, and by W. F. Heath that a preparation of maps on the Vann tract had been made showing the tract to be occupied for revetment purposes, the maps were introduced in evidence, proof by Art Moore, who testified in detail that the proposed levee would have a 4-foot free board, a 16-foot crown and a 3 to 1 slope on either side, and the revetment work would consist of fences of wire and cylinders on the bank of the river anchored to dead men and logs by means of cables running back from the river bank, and judgment thereon conformed to the pleadings and proof.

Defendant in error pleaded, and we think proved, that Cameron County had been requested by the United States officers, acting pursuant to the Act of Congress approved August 19, 1935, 49 Stat. 660, to acquire and convey an easement over said lands needed in connection with the Lower Rio Grande Flood Control Project, and that defendant in error desired to acquire and convey such lands to the United States pursuant to the Acts of 1934, 43rd Legislature, Fourth Called Session, page 71, Chapter 29, now Article 7880—147v, Vernon's Tex.Civ.St.1936, Revised Civil Statutes of Texas, 1925, and the Acts of 1937, 45th Legislature, S.B. 222, c. 202, now Article 7880—147v(1), Vernon's Tex. Civ.St.Supp.1938.

Error is assigned in not dismissing the suit at the close of the evidence because the United States failed to show a compliance with Article 3264, R.C.S., in its several sections in condemning the Vann land after the parties had failed to agree on the damages, in that no statement in writing was filed with the County Judge describing the land sought to be condemned nor the purpose for which it was to be used, naming the owner, etc.

In view of the above point we have reviewed the record in connection with the preliminary statement of the nature and result of the proceedings, and find, as we think, the provisions of Article 3264 have been fully complied with.

Propositions not specially discussed have been considered and are overruled.

We have found no reversible error and the case is affirmed.